**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CHARLES KUMAR EDWARDS and** | ) | **Case No. 20-cr-00066-RDM** |
| **MURALI YAMAZULA VENKATA,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANTS' MOTIONS IN LIMINE (ECF Nos. 67 & 69)**

The defendants seek to exclude two types of relevant and admissible evidence: (1) any references to "EDS 2.0" to describe the case management system that the defendants were developing using the allegedly stolen government property and (2) any evidence regarding computer access agreements that all three conspirators signed at or around the time they started working for the U.S. Department of Homeland Security – Office of Inspector General ("DHS–OIG").   The defendants' efforts to keep this probative and admissible evidence from the jury should be rejected.

First, regarding use of the term "EDS 2.0" and similar terms, those are the conspirators' words, not the government's.   The jury will hear evidence that the conspirators used this and similar terms such as "22nd Century EDS" and "Next Gen [EDS]" to pitch the commercial product that they were developing using the stolen government property.   Specifically, the evidence at trial will show that they used these terms to convey the sense that their product was an enhanced version of DHS–OIG's case management system, which was referred to as "EDS."   Therefore, to exclude these terms from the record would present a distorted version of events that would

severely undermine the jury's fact-finding function.

Second, the computer access agreements, which set forth the confidentiality and other requirements of public officials to whom DHS grants computer access, are being offered as intrinsic evidence of the defendants' knowledge and willfulness, both of which are elements of the crimes charged, and are thus admissible as relevant evidence of intent under Rule 401 and Rule 402.

The defendants' motions in limine should be denied.

## I.   THE TERM "EDS 2.0" IS ADMISSIBLE UNDER RULE 403[1]

The defendants move to "preclude government counsel and government witnesses from using the irrelevant, unduly prejudicial, and misleading term 'EDS 2.0' to describe the new case management system that was being developed" by the defendants.   Defendants' Motion in Limine to Preclude Use of Term "EDS 2.0" (hereinafter, "Motion I"), at 1 (ECF No. 67).   The defendants' motion is premised on two foundational arguments:   (1) that use of the term EDS 2.0 would convey to the jury the false impression that the defendants were "'repackag[ing] and resell[ing]' essentially the same product, EDS, to another government agency" when, in fact, the defendants sought to sell a "new case management system, which varied significantly from EDS, to another government agency"; and (2) that the term EDS 2.0 "*was never* used by Mr. Edwards, Mr. Venkata, or Ms. Patel."   Motion I, at 2 (emphasis in original).   Both arguments fail as a matter of fact.

On or about December 1, 2015, Patel contacted Witness One, a senior official of the United States Department of Agriculture – Office of Inspector General ("USDA–OIG"), to pitch a commercial product that she, defendant Edwards, and defendant Venkata were developing at the time.   *See*

---

[1]   The government has previously summarized the alleged crimes charged in the Indictment. *See* Government's Omnibus Response to Defendants' Motions to Dismiss, at 2–5 (ECF No. 66). The government, therefore, provides only an abbreviated recitation of facts for the Court's consideration.

Indictment ¶ 16(d) (ECF No. 1).   The government will present testimony from Witness One at trial that Patel, in furtherance of the conspiracy charged in Count One of the Indictment, described this commercial product as "EDS 2" and "next gen," which the witness understood to be a reference to the next generation of EDS.   Similarly, on May 26, 2016, Witness One met with defendant Edwards and Patel at a restaurant in Washington, D.C., to discuss the commercial product.   *See* Indictment ¶ 16(j). During the lunch meeting, defendant Edwards and Patel repeatedly referred to the commercial product as either "22nd Century EDS" or "Next Gen [EDS]."   This lunch meeting was surreptitiously recorded, and the jury will have an opportunity to hear defendant Edwards and Patel utter these terms during the pitch to Witness One.

In light of the foregoing, the defendants' claim that the term "EDS 2.0" is "law enforcement's pejorative characterization of the evidence," Motion I, at 5, is clearly incorrect, and to the extent that there are any factual disputes as to the meaning of this term or its attribution, any such determinations remain the sole province of the jury.   *See United States v. Moore*, 651 F.3d 30, 59 (D.C. Cir. 2011) ("Weighing trial evidence and making determinations of credibility are for the jury.") (internal quotations omitted) (collecting cases).   More importantly, however, the record at trial will establish that, whether referring to the commercial product as "22nd Century EDS," "Next Gen," or "EDS 2.0," both defendant Edwards and Patel repeatedly sought to convey to Witness One that their product would in fact consist of an enhanced version of EDS.   That fact is of significant relevance to the jury's determination of guilt or innocence and the government should be allowed to reference the *same* terms that the defendants used to pitch their commercial product to Witness One.

Lastly, the defendants' contention that the term "EDS 2.0" should be excluded from the government's presentation as unfairly prejudicial under Rule 403 fails for similar reasons.   The defendants' entire claim of unfair prejudice hinges on the contention that the "government's characterization of Mr. Edwards's proposed system as 'EDS 2.0' improperly, unfairly, and misleadingly expresses the government's **opinion** of the relatedness between EDS and Mr. Edwards's

proposed product, which is unsupported by the evidence."   Motion I, at 5 (emphasis in original). They further claim that allowing the government to do so would be "effectively the same as the government stating to the jury that the Defendant is guilty, and it has long been settled that the prosecutor should not 'assert to the jury what in essence is his opinion on guilt or innocence.'"   *Id.* at 5–6 (quoting *United States v. Robinson*, No. 16-cr-98 (CKK), 2017 WL 11496732 (D.D.C. June 30, 2017)).   But, as noted, there is ample evidence that defendant Edwards and Patel pitched their commercial product as an enhanced version of EDS.   It was the conspirators themselves, through their own words, who established the "relatedness" between their commercial product and EDS, not the government.   Therefore, although damning to the defendants' case because of its highly probative nature, this evidence is not unfairly prejudicial within the meaning of Rule 403.   The motion should be denied.

## II.   THE COMPUTER ACCESS AGREEMENTS ARE RELEVANT AND ADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 403

The defendants seek to exclude the computer access agreements (hereinafter, "Agreements") that they signed at or around the time that they started working for DHS–OIG. *See* Motion in Limine to Preclude the Government from Presenting Evidence Relating to Computer Access Agreements (hereinafter, "Motion II"), at 1 (ECF No. 69).   The defendants argue that the Agreements are not relevant to the charged conduct and that, in any event, the probative value of the Agreements is substantially outweighed by the risk of unfair prejudice.   As to the alleged unfair prejudice, the defendants contend that introduction of the Agreements would unfairly prejudice them (1) by "confus[ing] and mislead[ing] the jury," *id.* at 5, and (2) by exposing the jury to allegations that the defendants committed a prior bad act—*i.e.*, violating the Agreements— that is barred by Rule 404(b).   *Id.* at 6–7.   The defendants' motion has no merit.

**A.      The Computer Access Agreements Are Highly Probative of the Defendants'
Mental State at the Time of the Charged Offenses**

The defendants are charged in part with conspiracy to commit Theft of Government
Property, in violation of 18 U.S.C. § 371, and with one substantive count of Theft of Government
Property, in violation of 18 U.S.C. § 641.   In order to convict of both offenses, the government
must prove that the defendants acted knowingly and willfully.   *See* Indictment ¶¶ 11, 18 (ECF
No. 1).[2]   To meet this burden, the government will introduce the Agreements to establish at trial
that the defendants knew that they were dutybound (1) to "protect displayed, stored data, magnetic
media, printouts in accordance with the highest level of data sensitivity contained on that media";
(2) to "follow [DHS–]OIG policy for transmitting sensitive data (such as name, ssn, home address,
etc.) by utilizing WinZip or other OIG standard encryption software"; and (3) to "not remove DHS
computer systems or software from Government work spaces without express written permission."
*Id*. ¶ 3.   The charged conduct, as alleged in the Indictment, violated all three of the foregoing
commitments, and the fact that the defendants stole the proprietary software and sensitive
databases in spite of these commitments is direct evidence of their knowledge and willfulness,
both of which bear on the defendants' mental state.   *Cf. United States v. Torres*, 894 F.3d 305,
311 (D.C. Cir. 2018) ("Because direct evidence of mental state (such as a defendant's admission
as to what he was thinking) is rare, juries routinely determine intent from indirect, or
circumstantial, evidence.") (internal quotations omitted) (citing *United States v. Vega*, 826 F.3d
514, 523 (D.C. Cir. 2016)).   Accordingly, the Agreements are admissible as relevant evidence of

---

[2]      Although the plain language of 18 U.S.C. § 641 does not require willfulness, the D.C.
Circuit has observed that the Supreme Court, "[w]hile not indicating that any specific language is
necessary to allege intent" in a § 641 indictment, has "endorse[d]" the use of the terms
"'unlawfully, willfully and knowingly' as sufficient" in such a case. *United States v. Baker*, 693
F.2d 183, 186 (D.C. Cir. 1982) (quoting *Morrissette v. United States*, 342 U.S. 246, 270-76
(1952)); *see also United States v. Hurt*, 527 F.3d 1347, 1350 (D.C. Cir. 2008).

intent under Rule 401 and Rule 402.  *See, e.g.*, *United States v. Latney*, 108 F.3d 1446, 1448 (D.C. Cir. 1997) (holding that, where knowledge is an element of the charged offense, it is a fact of "consequence" for purposes of establishing relevance under Rule 401).

> **B.** **The Defendants' Arguments Opposing Admissibility on Rule 403 and Rule 404(b) Grounds Are Unavailing**

Notwithstanding the clear and direct relevance of the Agreements, the defendants nonetheless argue for their exclusion under Rule 404(b) and Rule 403.   Neither argument for the exclusion of this evidence is persuasive.

The Agreements should not be excluded under Rule 404(b) for the straightforward reason that the Agreements constitute intrinsic evidence of the defendants' intent in committing the charged offenses, not extrinsic evidence of a prior bad act.   To begin with, the government is not offering the Agreements to allege that the defendants violated them.   Rather, even though the defendants signed the Agreements prior to the commission of the alleged crimes, the government is offering the Agreements as proof of the defendants' knowledge and willfulness at the time of the charged offenses.   The leading case in the D.C. Circuit addressing the distinction between extrinsic versus intrinsic evidence held over 20 years ago that evidence of other acts is admissible as intrinsic (1) if the evidence is of an act that is part of the charged offense or (2) the act was performed contemporaneously with the charged crime and facilitated the commission of the charged crime.  *See United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000).   Here, the fact that the defendants signed the Agreements, thereby acknowledging the obligations set forth therein, meets both criteria in *Bowie*, as the evidence is proof of the defendants' knowledge and willfulness, which are elements of the charged offenses, and bears directly on the defendants' state of mind at the time of the charged offenses.   Specifically, the Agreements constitute proof that the defendants knew that they had a duty to, *inter alia*, "protect" the relevant property and to refrain

from removing "DHS computer systems or software" from their place of employment.   And yet, as charged in the Indictment, the defendants not only removed the sensitive property but made it available to software developers in India in furtherance of the conspiracy.   Accordingly, contrary to the defendants' contention, the Agreements do not constitute evidence of extrinsic prior bad acts; rather, they constitute evidence of the defendants' *mens rea* at the precise time of the charged offenses and are admissible as such.[3]

The defendants' Rule 403 argument is equally unavailing.   While minimizing the highly probative value of the Agreements, the defendants severely overstate the risk of prejudice that would result from their admission.   Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *United States v. Crowder*, 141 F.3d 1202, 1210 (D.C. Cir. 1998) (en banc). "'Unfair prejudice' within [the Rule 403] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (citing Fed. R. Evid. 403 advisory committee's notes).   On these facts, the defendants cannot meet this heavy burden.   For example, the defendants argue that introduction of the Agreements "will likely confuse and mislead the jury" because jurors "may believe that they are being tasked with making decisions about compliance with the [Agreements] rather than about the elements of the charged offenses."   Motion II, at 5.   This argument is utter speculation about the jury's ability to perform its function and it improperly suggests that the Court's jury charge will not sufficiently instruct the jury as to the elements of each offense and the jury's role at trial. In any event, should a risk of prejudice arise at trial due to imponderables or unanticipated

---

[3]     Even if the defendants' violation of the Agreements constituted extrinsic bad acts, they would nonetheless be admissible under Rule 404(b) as evidence of the defendants' intent, knowledge, and absence of mistake.   *See* Fed. R. Evid. 404(b)(2).

testimony, the Court is fully empowered to mitigate any such risk by issuing a limiting instruction

as to the appropriate use of the evidence.   *See United States v. Douglas*, 482 F.3d 591, 601 (D.C.

Cir. 2007) (affirming conviction where trial court admitted potentially prejudicial evidence but

properly instructed the jury on the "permissible and impermissible uses of the evidence"); *United*

*States v. Edelin*, 118 F. Supp. 2d 36, 42 (D.D.C. 2000) ("Defendants argue that jury instructions

would be insufficient to remove the risk of prejudice, but the Supreme Court has decided that jury

instructions are presumed to be effective.") (citing *Richardson v. Marsh*, 481 U.S. 200, 206

(1987)).


                                                    Respectfully submitted,



MATTHEW M. GRAVES                          COREY R. AMUNDSON
UNITED STATES ATTORNEY                     CHIEF
For the District of Columbia                Public Integrity Section

By: */s/ J.P. Cooney*                 By:   */s/ Victor R. Salgado*
    J.P. COONEY                              VICTOR R. SALGADO
    D.C. Bar No. 494026                      D.C. Bar No. 975013
    Assistant United States Attorney         Senior Litigation Counsel
    Public Corruption and Civil Rights Section   Public Integrity Section
    555 4th Street, N.W.                     Criminal Division
    Washington, D.C. 20530                   1301 New York Avenue, NW
    (202) 809-3502                           Washington, D.C. 20004
    joseph.cooney@usdoj.gov                  (202) 353-4580
                                             victor.salgado@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendants.


Dated:   January 12, 2022                              */s/ Victor R. Salgado*
                                                       Public Integrity Section
                                                       Criminal Division
                                                       U.S. Department of Justice