UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MURALI YAMAZULA VENKATA,<br><br>*Defendant.* | Criminal Action No. 20-66 (RDM) |

## MEMORANDUM OPINION AND ORDER

Defendant Murali Yamazula Venkata is charged in eight counts of a sixteen-count indictment: he is charged with conspiracy (18 U.S.C. § 371), theft of government property (18 U.S.C. § 641), wire fraud (18 U.S.C. § 1343), aggravated identity theft (18 U.S.C. § 1028A), and destruction of records (18 U.S.C. § 1519). Pending before the Court is Venkata's motion to dismiss Counts 12-15, which allege aggravated identity theft. Dkt. 62. The Court heard oral argument on the motion on March 21, 2022. After oral argument, and with leave of Court, Venkata filed a supplemental motion to dismiss Counts 12–15, Dkt. 105, and the government filed a brief in opposition, Dkt. 106. For the following reasons, the Court will **DENY** Venkata's motions in all but one respect and will **ORDER** additional briefing from the parties, to be filed on or before April 1, 2022, on the multiplicity issue that Venkata raises in his supplemental motion, *see* Dkt. 105 at 4–6.

### I. BACKGROUND

The following allegations are taken from the indictment, Dkt. 1. In June 2010, Venkata began working as an Information Technology ("IT") Specialist in the IT Division at the Department of Homeland Security–Office of the Inspector General ("DHS-OIG"). *Id.* at 2 (Indictment ¶ 3). While at DHS-OIG, Venkata reported to Sonal Patel, an Enterprise

Applications Branch Chief in the IT Division who "oversaw the development and maintenance of DHS-OIG's Enforcement Database System ('EDS')." *Id.* (Indictment ¶ 4); *see also id*. at 3 (Indictment ¶ 5).  Patel, in turn, was supervised by Charles Edwards, who served as Director of Information Technology and Deputy Chief Information Officer for DHS-OIG.  *Id*. at 3 (Indictment ¶ 5).  All three individuals—Venkata, Patel, and Edwards—previously worked at the U.S. Postal Service–Office of the Inspector General ("USPS-OIG"), where Edwards supervised Patel's work on "USPS-OIG's case management systems, including USPS-OIG's STARS database, which was used primarily for investigations and audits, as well as USPS-OIG's Performance and Results Information System ('PARIS'), which USPS-OIG employees used to interface with the STARS database." *Id.*; *see also id.* at 2 (Indictment ¶ 3).

The government alleges that Venkata, Patel, and Edwards conspired to—and did—commit theft of "(1) DHS-OIG's EDS system; (2) DHS-OIG's EDS source code," including a module known as "eSubpoena"; "(3) DHS-OIG's database, which included the [personal identifying information ('PII')] of DHS employees; and (4) USPS-OIG's STARS database and PARIS system, which included the PII of USPS employees." *Id.* at 5 (Indictment ¶ 12); *see also id.* at 15–16 (Indictment ¶¶ 17–18).  According to the government, the purpose of the conspiracy was to aid Edwards in "creat[ing] and develop[ing] a private commercially owned version of a case management system to be offered for sale to government agencies for [Edwards'] benefit, enrichment, and profit." *Id.* at 5 (Indictment ¶ 12).

The government brought criminal charges against all three alleged co-conspirators.  Edwards and Patel have pleaded guilty.[1]  Venkata is set to proceed to trial on March 28, 2022.

---

[1] The government charged Patel in a separate information with one count of conspiracy, in violation of 18 U.S.C. § 371.  *See* Information at *1, *United States v. Patel*, No. 19-cr-81 (D.D.C.

2

He is charged with one count of conspiracy to commit theft of government property and to defraud the United States, in violation of 18 U.S.C. § 371; one count of wire fraud, in violation of 18 U.S.C. § 1343; four counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A; and one count of destruction of records, in violation of 18 U.S.C. § 1519.

Venkata moves to dismiss the aggravated identity theft charges, Counts 12–15. Dkt. 62. The government filed an opposition, Dkt. 66, and Venkata filed a reply, Dkt. 72. On March 21, 2022, the Court heard oral argument on the motion. With leave of Court, Venkata filed a supplemental motion on March 23, 2022, Dkt. 105, and the government filed a response that same day, Dkt. 106. For the following reasons, the Court will **DENY** the motions, except with respect to Venkata's multiplicity argument; on that issue, the Court will **ORDER** further briefing from the parties on or before April 1, 2022.

## II.  ANALYSIS

Counts 12–15 of the indictment charge Venkata with violating the aggravated identity theft statute, 18 U.S.C. § 1028A. That statute provides, in relevant part:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1). The "felony violation[s] enumerated in subsection (c)" of Section 1028A include theft of government property, *see id.* § 1028A(c)(1), and wire fraud, *see id.* § 1028A(c)(5). Tracking the statutory text, the indictment charges that Venkata "did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person,

---

filed Mar. 4, 2019). Patel pleaded guilty on April 4, 2019. The government charged Venkata and Edwards together in the indictment at issue in this case; Edwards pleaded guilty to one count of conspiracy and one count of theft of government property on January 14, 2022. *See* Dkt. 79.

to wit, [K.C., S.B., B.U., and M.C.], during and in relation to certain felony offenses, to wit, Theft of Government Property and Wire Fraud, as alleged in Counts Two through Eleven of [the] Indictment." Dkt. 1 at 18–19 (Indictment ¶¶ 23–30). The indictment repeats that charge in four separate counts, with each count including the initials of a different individual whose identity was allegedly the subject of the crime. *Id.* Each of the four charges also incorporates the preceding paragraphs of the indictment, including the factual allegations supporting the conspiracy and wire fraud charges. *Id.*

Venkata presses two challenges to the aggravated identity theft charges. First, he argues that the indictment fails to allege facts sufficient to support charges of aggravated identity theft under 18 U.S.C. § 1028A. *See* Dkt. 62; Dkt. 105. Second, he argues that the Court should dismiss three of the four aggravated identity theft counts on multiplicity grounds. Dkt. 105. The Court will address each argument in turn.

### A.   Sufficiency of the Indictment

Federal Rule of Criminal Procedure 7 requires that an indictment contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). The rule was designed to "eliminate technicalities in criminal pleadings and [is] to be construed to secure simplicity in procedure." *United States v. Debrow*, 346 U.S. 374, 378 (1953). To that end, "an indictment need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *United States v. Verrusio*, 762 F.3d 1, 133 (D.C. Cir. 2014). The "generally applicable rule is that the indictment may use the language of the statute, but that language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged." *United States v. Conlon*, 628 F.2d 150, 156 (D.C.

4

Cir. 1980). When determining the sufficiency of an indictment, courts "look at the contents of the subject indictment 'on a practical basis and in [its] entirety, rather than in a hypertechnical manner.'" *United States v. McLeczynsky*, 296 F.3d 634, 636 (7th Cir. 2002) (alteration in original) (quoting *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)).

Venkata argues that the indictment fails to allege facts sufficient to show that any action with respect to any PII was taken "in relation to" one of the predicate felonies listed in Counts 12–15—that is, theft of government property or wire fraud. Dkt. 62 at 6. According to Venkata, the statute's "in relation to" language limits the statute's reach to actions a defendant takes "in order to facilitate another crime." *Id.* In Venkata's view, the indictment fails to state an offense because it avers only that the object of the alleged theft of government property and wire fraud scheme—the DHS-OIG and USPS-OIG systems—*incidentally* included PII; it does not, on Venkata's reading, include any allegation that he used or intended to use any PII for purposes of committing either of the alleged predicate offenses. According to Venkata, then, the government's allegations are "akin to an alleged purse snatcher being accused of aggravated identity theft because the purse contained a driver's license, even though the purse snatcher was never alleged to have even looked at the driver's license." *Id.* Venkata maintains that Counts 12-15 must, accordingly, be dismissed because Section 1028A does not sweep so broadly.

At oral argument on March 21, 2022, the government agreed with Venkata's reading of the statute's "in relation to" language—and for good reason. Although the Supreme Court has yet to interpret the phrase "in relation to" as it is used in Section 1028A, the weight of authority supports Venkata's reading. The relevant analysis starts with the Supreme Court's decision in *Smith v. United States*, 508 U.S. 223 (1993). In that case, the Supreme Court was called upon to interpret 18 U.S.C. § 924(c), which imposes a sentencing enhancement for "any person who,

5

*during and in relation to* any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1) (emphasis added). As relevant here, the Supreme Court concluded that the phrase "in relation to"—at least as used in Section 924(c)(1)—means, "at a minimum," to "have some purpose or effect with respect to the [predicate] crime; its presence or involvement cannot be the result of accident or coincidence." *Smith*, 508 U.S. at 237. Thus, to violate Section 924(c), "the gun at least must facilitate, or have the potential of facilitating," the predicate offense. *Id*.

Like Section 924(c), Section 1028A imposes a sentencing enhancement for any person convicted of committing the conduct proscribed in the statute "in relation to" an enumerated felony offense. Importantly, the use of that same phrase was intentional; Section 1028A "was modeled on the [scheme] used in . . . Section 924(c)."[2] Given this history and the textual similarity, several courts have extended *Smith*'s reading of "in relation to" to cases brought under Section 1028A. *See, e.g.*, *United States v. Mobley*, 618 F.3d 539, 542 (6th Cir. 2010); *United States v. Wedd*, 993 F.3d 104, 123 (2d Cir. 2021). The Solicitor General, moreover, has taken a similar approach, arguing that Section 1028A's "'in relation to' requirement ensures that a defendant does not violate the statute unless his unlawful transfer, possession, or use of a means of identification that is . . . that of [an]other person 'facilitat[es] or 'ha[s] the potential of facilitiating' the predicate felony." Brief for United States at *7, *Flores-Figueroa v. United States*, 556 U.S. 646 (2009) (quoting *Smith*, 508 U.S. at 238). Consistent with that position and

---

[2] *Identity Theft Penalty Enhancement Act, and the Identity Theft Investigation and Prosecution Act of 2003: Hearing on H.R. 1731 and H.R. 3693 Before the Subcomm. on Crime, Terrorism, and Homeland Sec. of the H. Comm. on the Judiciary*, 108th Cong. 11 (2004) (statement of Timothy Coleman, Counsel to the Assistant Attorney General, Criminal Division, U.S. Department of Justice). The bill containing what is now Section 1028A was jointly proposed by the Department of Justice and Senator Diane Feinstein. *See id.* at 10.

the weight of authority, counsel for the government in this proceeding acknowledges that a defendant's conduct must "facilitate or have the potential of facilitating" a qualifying predicate offense to constitute aggravated identity theft.  *Smith*, 508 U.S. at 237.

According to the government, the problem with Venkata's argument is not that he misstates the proper legal standard.  The problem, in the government's view, is that he misreads the indictment.  It does not allege, as Venkata maintains, that the misappropriation of the PII was merely coincidental.  To the contrary, according to the government, the indictment alleges that the PII was used to further the overall criminal scheme, and thus the indictment satisfies the *Smith* standard.  As the government explained further at oral argument, the facts alleged in the indictment support a theory that the co-conspirators allegedly used the stolen PII to test the systems that they stole and to demonstrate to developers in India how the system they were developing should function.  A close reading of the indictment supports this understanding.

The indictment first alleges that Edwards, Venkata, and Patel misappropriated, among other things, "DHS-OIG's data, which included the PII of DHS employees" and "USPS-OIG's STARS database and PARIS system, which included the PII of USP employees."  Dkt. 1 at 5 (Indictment ¶ 12).  Subsequent allegations parrot this language, each time noting that the DHS-OIG and USPS-OIG STARS database and PARIS system "included the PII of" DHS or USPS employees.  *Id.* at 5–6 (Indictment ¶¶ 14, 15(a)).  The indictment then alleges that Edwards "transferred the stolen DHS-OIG and USPS-OIG documents and information, including PII of DHS and USPS employees, to software developers in India who were assisting . . . Edwards with the creation and development of a private, commercially owned version of a case management system"  *Id.* at 7 (Indictment ¶ 15(e)).  The indictment also alleges that Edwards "provided the software developers [in India] with remote access over the Internet to the EDS source code and

7

DHS-OIG database files that . . . Edwards had saved on a non-government server in his residence." *Id.* at 11 (Indictment ¶ 16(q)). Finally, the indictment alleges that Venkata assisted Edwards in installing and configuring the PARIS system, "with data imported from STARS, on another server in his residence to assist the developers in India in seeing how the system under development should work." *Id.* at 14 (Indictment ¶ 16(kk)). Taken together, these allegations satisfy the *Smith* standard; they posit that the co-conspirators knowingly transferred, possessed, or used the PII contained in the DHS-OIG database and STARS database and PARIS system to *facilitate* their other, unlawful conduct.

This theory of the case was, apparently, news to Venkata's counsel at the March 21 oral argument. Faced with this theory of the case, counsel for Venkata seemed to acknowledge that, if proven beyond a reasonable doubt, those facts would support a conviction under the plain language of Section 1028A. But Venkata now raises a different argument: he argues that the allegations discussed above cannot reasonably be read to allege the theory that the government presented at oral argument. *Id.* at 1–2. Venkata thus accuses the government of (1) "recognizing" at this late stage that the indictment "failed to allege" a "causation nexus," as required under *Smith*, and (2) "attempt[ing] to reason backward" by pointing to specific allegations in the indictment "to argue that the government had put Mr. Venkata on notice." Dkt. 105 at 1–2. Venkata emphasizes, in particular, that paragraph 16(kk) of the indictment refers to "data imported from STARS"—rather than "*PII*" imported from STARS—when discussing the co-conspirators' efforts to assist the developers in India is seeing how the system under development should work. Dkt. 105 at 2. He maintains that, "given the fact that the Indictment goes out of its way to mention incidentally relevant PII, . . . a reasonable reader would interpret

8

the reference to 'data' in paragraph 16(kk) as a meaningful variation and the failure to mention PII as a meaningful omission." *Id.*

The Court is unpersuaded. When examined as a whole, the indictment alleges that Venkata, Edwards, and Patel stole the PII of USPS employees when they copied the STARS database and PARIS system. *See, e.g.*, Dkt. 1 at 6 (Indictment ¶ 15). Having alleged that background premise, the indictment further alleges that they then installed the data "imported from STARS," which is fairly understood to include the PII, on another server to "assist the developers in India in seeing how the system under development should work." Dkt. 1 at 14 (Indictment ¶ 16(kk)). Taken together, those allegations are more than sufficient to inform Venkata of the nature of the charges against him. To be sure, the indictment could be more specific in the ways Venkata proposes. But "the validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *Verrusio*, 762 F.3d at 13 (quoting *Debrow*, 346 U.S. at 378); *see also Resendiz-Ponce*, 549 U.S. at 110 ("While detailed allegations might well have been required under common-law pleading rules, they surely are not contemplated by Rule 7(c)(1)." (citation omitted)). To dismiss the indictment for failure to use the word "PII," instead of the phrase "data imported from STARS," moreover, would effectively require the Court to adopt the hypertechnical approach that courts have eschewed. *See, e.g., McLeczynsky*, 296 F.3d at 636. It is sufficient that the indictment alleges the essential elements of aggravated identity theft in terms that "inform the defendant of the precise offense of which he is accused," *Verrusio*, 762 F.3d at 133—namely, that he is charged with transferring, possessing, or using PII to facilitate theft of government property and wire fraud.

The Court will, accordingly, **DENY** Venkata's motions to dismiss Counts 12–15 for failure to allege sufficient facts. Dkt. 62; Dkt. 105.

**B.     Multiplicity**

In his supplemental motion to dismiss, Venkata presses an additional argument: "the government may only proceed with one Count for all four offenses alleged in Counts 12–15 of the Indictment." Dkt. 105 at 4.  The crux of Venkata's argument is that the Court should adopt the reasoning in *United States v. Miller*, 883 F.3d 998 (7th Cir. 2018), in which the Seventh Circuit held that a defendant who "possessed over 200 means of identification in a single notebook [that he] used to carry out a common credit card scheme" could "only be convicted of one violation of . . . Section 1028A," *id.* at 1004.  To reach this conclusion, the Seventh Circuit reasoned that the statute was ambiguous "as to the unit of prosecution intended by Congress," and it, accordingly, applied the rule of lenity.  *Id.* at 1003–04.

The government's opposition begins by noting that Venkata raised this argument for the first time "at oral argument only one week before trial" on March 21, 2022.  Dkt. 106 at 3.  The Court "permitted Venkata to file his supplemental brief by noon on March 22, 2022, and ordered the government to respond within 24 hours."  *Id.*  In light of those circumstances, the government argues that "it is not possible to adequately brief this issue on such a short timeframe."  The government thus "respectfully submits that Venkata's motion should be held in abeyance so that the Court can decide the issue following full briefing and argument."  *Id.*

The Court agrees with the government that Venkata's multiplicity argument was presented too late to permit the government to brief and the Court to decide the question before trial commences.  The indictment in this case has been pending since March 5, 2020, and the deadline for filing motions to dismiss passed on December 2, 2021.  *See* Dkt. 53.  Venkata now asks the Court to adopt the reasoning of an opinion from outside of this circuit in which, after carefully parsing the aggravated identity theft statute, the Seventh Circuit determined that the

10

statute was ambiguous. *Miller*, 883 F.3d at 1004. Because there is no controlling authority in this jurisdiction and because the question is a difficult one, the Court would benefit from more complete briefing from the parties before deciding whether all four counts should go to the jury. The Court will, accordingly, hold the pending motion in **ABEYANCE** and will **ORDER** that the parties submit further supplemental briefs on or before April 1, 2022.

## CONCLUSION

For the foregoing reasons, Venkata's motion to dismiss Counts 12–15 of the indictment for failure to state an offense, Dkt. 62; Dkt. 105, is **DENIED**. The Court further **ORDERS** that Venkata's supplemental motion to dismiss three of the four aggravated identity theft counts shall be held in **ABEYANCE** pending further briefing from the parties. It is further **ORDERED** that the parties shall submit supplemental briefs on the multiplicity issue on or before April 1, 2022.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: March 26, 2022